872 F.2d 30
 EASTERN TELECOM CORPORATION, Appellant,
v.
BOROUGH OF EAST CONEMAUGH Francis Feist, Larry Gossard,
Robert Fisher, Jr., Joseph Rishell, John Zaluski, John
Stecik and Michael Vargo, individual council members or
their elected replacements, Appellees.
 No. 88-3516.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 24, 1989.
Decided March 30, 1989.
 
 John R. Previs, Mark D. Shepard (argued), Buchanan Ingersoll, Professional Corp., Pittsburgh, Pa., for appellant.
 Sandra W. Upor (argued), Somerset, Pa., for appellees.
 Before GIBBONS, Chief Judge, SEITZ and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 Eastern Telecom Corporation, an operator of cable television systems, including the system serving the Borough of East Conemaugh, Pennsylvania, appeals from a judgment in favor of that Borough in Eastern's suit seeking to compel the Borough to comply with the franchise renewal procedures in the Cable Communications Policy Act of 1984. Pub.L. 98-549, 98 Stat. 2780, 47 U.S.C. Sec. 521 et seq. (Supp. II 1984). The suit was tried non-jury, and the district court made findings of fact and conclusions of law. The court found that the Borough had in compliance with the Cable Act fixed a date for the submission of a renewal proposal, that Eastern missed this deadline, and that Eastern had no right to any further consideration of its proposal. There is no finding, and so far as we can determine, no evidence that a time limit for submission of proposals was fixed in the manner required by the Cable Act. We will therefore reverse and remand for further proceedings.
 
 I.
 
 2
 In the 1984 Cable Act Congress amended the Communications Act of 1934 to provide a national policy concerning cable communications. Prior to the passage of the Cable Act there was no national policy on the development of cable television. The cable industry was regulated entirely at the local level through municipal franchise processes which defined the level of service, fixed rates, and in some instances fixed terms of franchises. Among the purposes of the Cable Act was the establishment of "an orderly process for franchise renewal which protects operators against unfair denials of renewal ..." 47 U.S.C. Sec. 521(5) (Supp. II 1984). The Cable Act defines "franchise" as "an initial authorization, or renewal thereof (including a renewal of an authorization which has been granted subject to section 526 of this title), issued by a franchising authority ... which authorizes construction or operation of a cable system." 47 U.S.C. Sec. 522(8) (Supp. II 1984). A "franchising authority" is "any governmental authority authorized by Federal, State or local law to grant a franchise." 47 U.S.C. Sec. 522(9) (Supp. II 1984).
 
 
 3
 It is common ground that the Borough is a franchising authority authorized by Pennsylvania law to grant franchises, and that Eastern held a franchise which commenced on July 1, 1968, and continued until an expiration date of July 1, 1988. The Cable Act governs renewals of franchises which were in effect on October 30, 1984 and expire thereafter. 47 U.S.C. Sec. 546(g) (Supp II 1984). Thus renewal of Eastern's franchise is governed by the Cable Act, which provides for a two stage renewal process. 47 U.S.C. Sec. 546(a)-(f) (Supp. II 1984).
 
 
 4
 In the first stage, the franchising authority may on its own initiative, or must if the cable operator requests, convene proceedings which afford the public in the franchise area an opportunity to participate in "(1) identifying the future cable-related community needs and interests, and (2) reviewing the performance of the cable operator under the franchise during the current franchise term." 47 U.S.C. Sec. 547(a) (Supp. II 1984). Such a proceeding must take place "[d]uring the six-month period that begins with the 36th month before the franchise expiration." Id. It is common ground that on December 10, 1985 the Borough convened a section 546(a) proceeding for the receipt of public comment.[1]
 
 
 5
 Once a section 546(a) public comment proceeding has occurred, a second stage of the renewal process is specified:
 
 
 6
 (b) Submission of renewal proposals; contents; time
 
 
 7
 (1) Upon completion of a proceeding under subsection (a) of this section, a cable operator seeking renewal of a franchise may, on its own initiative or at the request of a franchising authority, submit a proposal for renewal.
 
 
 8
 (2) Subject to section 544 of this title, any such proposal shall contain such material as the franchising authority may require, including proposals for an upgrade of the cable system.
 
 
 9
 (3) The franchising authority may establish a date by which such proposal shall be submitted.
 
 
 10
 (c) Notice of proposal; renewal; preliminary assessment of nonrenewal; administrative review; issues; notice and opportunity for hearing; transcript; written decision
 
 
 11
 (1) Upon submittal by a cable operator of a proposal to the franchising authority for the renewal of a franchise, the franchising authority shall provide prompt public notice of such proposal and, during the 4-month period which begins on the completion of any proceedings under subsection (a) of this section, renew the franchise or, issue a preliminary assessment that the franchise should not be renewed and, at the request of the operator or on its own initiative, commence an administrative proceeding, after providing prompt public notice of such proceeding, in accordance with paragraph (2) to consider whether--
 
 
 12
 (A) the cable operator has substantially complied with the material terms of the existing franchise and with applicable law;
 
 
 13
 (B) the quality of the operator's service, including signal quality, response to consumer complaints, and billing practices, but without regard to the mix, quality, or level of cable services or other services provided over the system, has been reasonable in light of community needs;
 
 
 14
 (C) the operator has the financial, legal, and technical ability to provide the services, facilities, and equipment as set forth in the operator's proposal; and
 
 
 15
 (D) the operator's proposal is reasonable to meet the future cable-related community needs and interests, taking into account the cost of meeting such needs and interests.
 
 
 16
 (2) In any proceeding under paragraph (1), the cable operator shall be afforded adequate notice and the cable operator and the franchise authority, or its designee, shall be afforded fair opportunity for full participation, including the right to introduce evidence (including evidence related to issues raised in the proceeding under subsection (a) of this section), to require the production of evidence, and to question witnesses. A transcript shall be made of any such proceeding.
 
 
 17
 (3) At the completion of a proceeding under this subsection, the franchising authority shall issue a written decision granting or denying the proposal for renewal based upon the record of such proceeding, and transmit a copy of such decision to the cable operator. Such decision shall state the reasons therefor.
 
 
 18
 47 U.S.C. Sec. 546(b)(c) (Supp. II 1984). These opaque provisions are at the heart of the dispute between the parties. The immediately following subsection narrowly circumscribes the permissible grounds for nonrenewal, and the next thereafter provides for judicial review of final nonrenewal decisions. 47 U.S.C. Sec. 546(d), (e) (Supp. II 1984). The Borough's position is that acting pursuant to section 546(b)(3) it fixed a deadline for the submission by Eastern of a renewal proposal, and that Eastern, aware of that deadline failed to meet it. Thus, the Borough argues, none of the administrative or judicial review proceeding specified in section 546 are required. Eastern, on the other hand, contends that no deadline was established and no deadline was communicated to it.
 
 II.
 
 19
 More than 36 months before the expiration of its franchise, Eastern, attempting to negotiate a renewal of its franchise, submitted several proposals for renewal to the Borough. See 47 U.S.C. Sec. 546(h) (Supp. II 1984). These proposals were rejected. On July 10, 1985, within 36 months of the July 1, 1988 expiration date, Borough Solicitor James R. Di Francesco sent a letter to Eastern advising that the Borough intended to construct its own cable television system. Di Francesco apparently was unaware of the provisions of the Cable Act protecting cable franchisees. When he was appraised of the law Di Francesco, by letter dated November 12, 1985, informed Eastern that it had scheduled a section 546(a) public hearing on December 10, 1985.
 
 
 20
 Such a hearing occurred, attended by members of the Borough Council, Borough Solicitor Di Francesco, and several representatives of Eastern. Eleven residents were questioned by the Borough Solicitor. The hearing lasted about one hour and twenty minutes. Near the end of the hearing Di Francesco commented:
 
 
 21
 I have one more comment. I would like to direct this to Eastern Telecom. We still do not get financial statements from you as required by the judge's order, and by the contract, on a yearly basis, and I have even had to write to you to request you to make your payments on time as you have been delinquent in your payments to us, and haven't been paying the correct amounts to us, which is a continuing violation of your contract, which quite frankly irritates the hell out of me. I don't know why, with a computer system like you have we can't get a printout as to your financial statements concerning this cable television system every year so we can calculate exactly whether or not we are getting paid at the rate we are supposed to be paid. It's just irritating to counsel and its irritating to myself that you continue to violate the contract, you violate the court order, because you don't seem to care about this community. Regardless of that, we are going to review this testimony and hope you submit a proposal within the next four months for renewal of your contract that we can review, and if necessary have a subsequent public hearing so these people have an opportunity to go over that proposal.
 
 
 22
 A. 286-87 (emphasis added).
 
 
 23
 After the close of the hearing, events occurred about which there was a sharp dispute in the trial testimony. Di Francesco, the council president and a third Borough witness testified that a conversation took place during which Di Francesco informed Eastern that it must submit a proposal on or before April 30, 1986. The three Eastern representatives testified that no such conversation took place and that no deadline was communicated to Eastern. The trial court credited the testimony of the Borough witnesses that Di Francesco told the Eastern representatives they should submit a proposal by April 30, 1986.
 
 
 24
 Eastern contends the trial court's finding is clearly erroneous, while the Borough defends it. We need not resolve this factual dispute, however, because the finding in the Borough's favor is not legally relevant.
 
 III.
 
 25
 The Cable Act superimposes on an existing matrix of state regulation new federal standards. Thus, the Act imposes federal obligations on franchising authorities, which are creatures of state law. In a number of places the Act refers to action by such franchising authorities, without specifying the formalities required for such action. A notable instance is section 546(b)(3) which refers to the establishment of a date by which a renewal proposal shall be submitted. There are, of course, due process minimums for such actions. See, e.g., Tucker v. United States Postal Service, 676 F.2d 954 (3d Cir.1982) (claims under the Federal Tort Claims Act, 28 U.S.C. Secs. 2674, 2675 must be submitted to appropriate government agency in detailed, written form); In re Herd, 840 F.2d 757 (10th Cir.1988) ("[w]ritten notice of the bar deadline date for filing claims ... [under the Bankruptcy Code, 11 U.S.C. Sec. 2002(a)(8) must] ... be clear and unambiguous."). Short of such minimums, the courts might fill in the interstices in the federal statutory scheme by specifying such formalities. In the absence, however, of any conflict between state law and either due process or the underlying federal statutory policy, there is no reason to assume that Congress did not intend that state law govern the formalities required for action by a franchising authority. See, e.g., United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (look to state law for federal common law rule as long as it is not discriminatory or in conflict with federal statute). See generally C. Wright, Law of Federal Courts 394-95 (4th ed. 1984).
 
 
 26
 In this case the franchising authority is a Pennsylvania Borough. Pennsylvania law vests the management of a borough's affairs in its council. 53 Pa.Stat. Secs. 46001, 46005 (Purdon 1966). The manner in which the council acts depends on the nature and importance of the contemplated action. The statutory provision here relevant states that:
 
 
 27
 [I]t shall be the duty of the borough council:
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 (3) To enact, revise, repeal and amend such bylaws, rules, regulations, ordinances and resolutions, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough and to provide for the enforcement of the same. The legislative powers of boroughs including capital expenditures not payable out of current funds, shall be exercised by or be based on an ordinance. All other powers shall be exercised by vote of the majority of council present at a meeting, unless otherwise provided. Routine, ministerial or administrative purchases and powers may be made and exercised by officers and committees, if authority therefor was previously given, or if the action is subsequently ratified by council. Whenever any action by the council shall result in a specific written contract or agreement, such contract or agreement shall be signed by the president of the borough council.
 
 
 31
 53 Pa.Stat. Sec. 46006(3) (Purdon 1987 Supp.) At a minimum, this statute required that the power to fix a deadline for the submission of a renewal proposal be exercised by a resolution and a majority vote of the council. There is no evidence in the record of any such action. The only evidence is that the Borough Solicitor orally fixed the April 30, 1986 deadline. Even if fixing a deadline were construed to be a routine ministerial power there is no evidence that the Borough had prior to December 10, 1985 conferred such authority on the Borough attorney. There is no evidence that prior to April 30, 1986 the Borough Council ratified the Borough Solicitor's action.
 
 
 32
 We hold that the fixing pursuant to section 546(b)(3) of a deadline for submission of a franchise renewal application must be done with at least the formalities required by the state law governing the actions of the state chartered franchising authority; in this instance those required by 53 Pa.Stat. Sec. 46006(3). Since the Borough presented no evidence that the April 30, 1986 deadline was so fixed, the failure of Eastern to meet it cannot be relied upon as a ground for affirming the judgment appealed from.
 
 
 33
 The complete absence of evidence of a properly established deadline technically suggests that there is no need to address Eastern's further objection that notice of the deadline was in any event inadequate. Since, however, this is the first occasion on which we must construe the Cable Act, but certainly will not be the last, we deem it appropriate to note the contention. The Cable Act establishes a significant federal law property expectation in the renewal of a franchise. Section 546(b)(3) enables a franchising authority to "establish" a deadline. To establish means, at least, to settle or fix firmly; to put beyond doubt or dispute. Since the establishment of such a deadline has a very significant effect upon the federal law property expectation in renewal of a franchise, the franchise holder's interest in it is considerable. Compliance with the deadline is the franchise holder's only opportunity to preserve its right to the formal administrative hearing on renewal specified in the Cable Act, its right to a written statement of reasons for nonrenewal and its opportunity for judicial review of a negative renewal decision. The burden on a franchising authority of giving a formal written notice of the establishment of such a deadline is minimal. In these circumstances, whether or not due process requires a more formal notice than a casual remark at the end of a hearing devoted to another purpose, a reasonable federal common law rule, implied from the overall scheme of the Cable Act clearly does. Thus, we are prepared to hold not only that a section 546(b)(3) deadline must be established by the formalities required by state law, but that when it is so established it must be communicated to the franchise holder in writing. See 47 U.S.C. Sec. 555 (action seeking judicial review must be brought within 120 days after receiving notice of [adverse] determination). Such a construction of the Cable Act is consistent with the overall purpose of Congress, amply reflected in its legislative history, of assuring a high degree of protection to cable operators. See H.R.Rep. No. 934, 98th Cong.2d Sess. 25, 72, 73 reprinted in 1984 U.S.Code Cong. & Ad.News, 4655, 4662-63, 4709, 4710.
 
 IV.
 
 34
 The district court, in dismissing Eastern's suit, held alternatively that it was time barred by 47 U.S.C. Sec. 555. That section provides that "[a]ny cable operator adversely affected by any final determination made by a franchising authority under section 545 or 546 of this title may commence an action within 120 days after receiving notice of such determination." Eastern's action was filed on March 12, 1987, which was within 120 days of receipt of a November 13, 1986 letter advising that the Borough would not convene a section 546(b) administrative hearing.
 
 
 35
 The district court, however, held that the final determination not to renew occurred on June 30, 1986 when the Borough rejected Eastern's renewal application. We must determine, therefore, how the judicial review provisions of section 546(e) and the time limit in section 555 interrelate. The latter, on its face, appears to apply both to final nonrenewal decisions made after an administrative hearing and to procedural defaults such as refusals to convene such a hearing. Timeliness therefore turns upon the type of adverse action of which Eastern complains.
 
 
 36
 We have held in Part III above that the Borough did not lawfully establish a deadline for the submission of a renewal application. That being the case, Eastern's submission of a renewal application on July 13, 1986 was timely. 47 U.S.C. Sec. 546(h) (Supp. II 1984). Eastern's November 3, 1986 written request for a section 546(c) administrative hearing was also timely. The adverse action of which Eastern complains is the Borough's refusal to convene an administrative hearing. Eastern filed a complaint challenging notice of that adverse action within 120 days of receipt of notice of the Borough's refusal. Therefore, the action is not time barred.
 
 
 37
 Our attention has been called to the 4-month period referred to in section 546(c)(1). We read that provision as placing a limit on the time within which a franchising authority must complete administrative proceedings on a duly submitted renewal application. Any other reading would render section 546(h) a nullity, since it says that a cable operator may submit a renewal proposal "at any time."
 
 V.
 
 38
 There is no record evidence establishing that the Borough lawfully established a section 546(b)(3) deadline. Eastern's action is not time barred. The judgment appealed from will therefore be reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Another subsection provides:
 Notwithstanding the provisions of subsections (a) through (g) of this section, a cable operator may submit a proposal for the renewal of a franchise pursuant to this subsection at any time, and a franchising authority may, after affording the public adequate notice and opportunity for comment, grant or deny such proposal at any time (including after proceedings pursuant to this section have commenced). The provisions of subsection (a) through (g) of this section shall not apply to a decision to grant or deny a proposal under this subsection. The denial of a renewal pursuant to this subsection shall not affect action on a renewal proposal that is submitted in accordance with subsections (a) through (g) of this section.
 47 U.S.C. Sec. 546(h) (Supp. II 1984). See section IV of this opinion infra.