**WARNER CABLE COMMUNICATIONS INC., Plaintiff,**

**v.**

**BOROUGH OF SCHUYLKILL HAVEN, Defendant.**

**Civ. A. No. 91–0152.**

United States District Court, E.D. Pennsylvania.

Jan. 29, 1992.

James Wallbillich, John S. Harrison, Frumkin, Shralow & Cerullo, Philadelphia, Pa., for plaintiff.

C. William Shilling, Zimmerman, Lieberman and Derenzo, Pottsville, Pa., for defendant.

OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This diversity action arises out of a dispute between the Borough of Schuylkill Haven ("Schuylkill Haven Borough") and Warner Cable Communications Inc. ("Warner Cable") over who will supply cable television services to the residents of Schuylkill Haven Borough.[1] Warner Cable contends that Schuylkill Haven Borough is preparing to build and operate its own cable television company, and that in doing so Schuylkill Haven Borough violates both its exclusive contract with Warner Cable and the Pennsylvania Borough Code.[2] Warner Cable asks this court to enter declaratory judgment stating that Schuylkill Haven Borough's construction or operation of a cable television system is a material breach of Warner Cable's franchise and that Schuylkill Haven Borough has no authority to do so, and that all acts done in furtherance of the plan to construct and operate a cable system are *ultra vires* and void. Warner Cable also asks the court to enjoin Schuylkill Haven Borough from building and operating a cable system.

Before us now are two motions asking us to decide this case without a trial. Plaintiff asks for summary judgment, and Defendant Borough asks us to dismiss the complaint or stay the action indefinitely. Today we decide both motions and issue this memorandum in explanation of our decisions.

*I. Schuylkill Haven Borough's Motion to Dismiss*

Fed.R.Civ.P. 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted, while Fed.R.Civ.P. 12(b)(1) allows a court to dismiss due to lack of jurisdiction over the subject matter. Defendant Schuylkill Haven Borough bases its motion on both grounds, but their argument is directed toward this court's jurisdiction. The criteria which a court must use in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are clear. We must accept as true all factual allegations and all reasonable inferences that can be drawn therefrom, *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1395 (3d Cir. 1991), and we must view them in the light most favorable to plaintiffs, the non-moving party, *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). We may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

In deciding a motion pursuant to Rule 12(b)(1), however, we are not restricted to the facts pleaded in the complaint. "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). It is then up to the plaintiff to respond with facts [3] supporting a finding of federal jurisdiction, and the burden of demonstrating jurisdiction is on the plaintiff. *Id.* Where the motion is based on a claim that the plaintiff's claim is not ripe for adjudication, the district court may decide the ripeness issue without submitting it to a jury for

1. This court's jurisdiction is based on 28 U.S.C. § 1332—Plaintiff is a Delaware corporation with a principal place of business outside of Pennsylvania, Defendant is a citizen of Pennsylvania for diversity purposes, and the amount in controversy exceeds $50,000.

2. The Borough Code is found at 53 P.S. §§ 45101 *et seq.*

3. When a motion is based on facts not in the record Fed.R.Civ.P. 43(e) allows a court to hear the matter on affidavits, testimony or depositions.

factual findings. *Id.* at 202; *see also Kulick v. Pocono Downs,* 816 F.2d 895, 898 (3d Cir.1987) (district court may resolve jurisdiction issues at any time, without a jury).

Schuylkill Haven Borough offers two grounds upon which the Complaint should be dismissed. First, Schuylkill Haven Borough contends that Warner Cable's claims are so unripe as to present no justiciable case or controversy, and so this court is prohibited by Article III of the United States Constitution from rendering judgment for Warner Cable. Second, Schuylkill Haven Borough argues that the court should exercise the discretion allowed by the Declaratory Judgment Act and by the *Colorado River* doctrine to dismiss the Complaint because there is a pending proceeding before the Pennsylvania Department of Community Affairs in which the issue of the lawfulness of Schuylkill Haven Borough's plan to run its own cable system could be considered. We will consider each argument in turn.

A. The Ripeness Doctrine

As the Third Circuit Court of Appeals recently pointed out, the doctrine of ripeness is one of indefinite contours, especially when considered in conjunction with a declaratory judgment action. *Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 646 (3d Cir.1990).[4] While the Declaratory Judgment Act allows a court to issue a judgment before "accomplished" injury can be established, we are still limited by the Constitution to deciding cases where an actual case or controversy exists. The dispute between the parties must be definite and concrete, not abstract or hypothetical, and the controversy must be real and substantial. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). The Third Circuit has laid out three principles which should guide our inquiry into the existence of a case or controversy: 1) the adversity of the interest of the parties, 2) the conclusiveness of the judicial judgment requested, and 3) the practical help, or utility, of that judgment. *Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d at 647.

Schuylkill Haven Borough rests its argument against ripeness on what they view as the uncertainty of the injury which Warner Cable fears, contending that the requisite adversity of interests is not present here. The Constitution requires that the litigants before the court have a sufficient "personal stake in the outcome" of the lawsuit such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult ... statutory issues." *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). "It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct. The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (citations omitted). We find that Warner Cable has alleged and substantiated a sufficiently real and immediate threat of injury.

Warner Cable alleges in its complaint, and Schuylkill Haven Borough does not dispute, that it has had an exclusive franchise to own and operate a cable television system in Schuylkill Haven Borough since at least 1981, that it operates such a system currently and would like to continue to do so, and that it has a legitimate expectancy of renewal of that franchise under federal law.[5] *See* Exhibit A to Plaintiff's Motion for Summary Judgment, Affidavit of

4. While *Step-Saver Data Systems* was an action for declaratory judgment only, and in the case at bar we are asked to issue an injunction as well as a declaratory judgment, we find that the Court of Appeals' analysis of the case or controversy clause of Article III is equally applicable here.

5. The Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.* establishes procedures which franchising authorities must follow in considering requests for renewal. The Act "establishes a significant federal law property expectation in the renewal of a franchise." *Eastern Telecom Corp. v. Borough of East Conemaugh,* 872 F.2d 30, 35 (3d Cir.1989).

Bruce Gormont. Schuylkill Haven Borough has announced its intention to build and operate a competing cable television system, has solicited and received bids to construct a system, has discussed a construction contract with a particular firm, and has taken steps to arrange financing for the project. *See* Exhibit B to Plaintiff's Motion for Summary Judgment, Affidavit of Martin J. Cerullo, Esq., and Attachment 1 to the Affidavit, February 13, 1990 Letter from Borough Manager Donald Munch; Exhibit C to Plaintiff's Memorandum in Opposition (Dkt. No. 8, filed March 25, 1991), Affidavit of James P. Wallbillich, Esq. and accompanying Letter from Borough Solicitor Cortlandt C. Choate, Jr., Esq.; June 11, 1991 Deposition of Douglas R. Satterfield at 48 (concerning consultation with representative of Robbins Construction Company). Those steps included the enactment by the Borough Council of an ordinance providing for the issuance of a $500,000 note to finance "the construction and installation of a cable television system owned and operated by the aforementioned Municipal Corporation."[6] Schuylkill Haven Borough has also established an advisory board to exercise editorial control over the proposed system's programming, as federal law requires.

Warner Cable alleges that it's system in Schuylkill Haven is worth over $4 million, and that it generates approximately $50,000 per month in revenues, and that Warner Cable will be irreparably injured in loss of good will, customers, and profits if Schuylkill Haven Borough carries out its plan. Indeed, Schuylkill Haven Borough conceded at oral argument that Warner Cable will be injured if Schuylkill Haven Borough is permitted to carry out its plan. They dispute only the likelihood that they will proceed with construction of the cable system.

Schuylkill Haven Borough includes with its Motion to Dismiss a copy of a letter from the Borough Manager, Donald F. Munch, dated February 13, 1990, stating clearly that Schuylkill Haven Borough plans to build a cable television system and compete with Warner Cable. *See* Exhibit C to Motion to Dismiss, also offered by Plaintiff as Exhibit B to Plaintiff's Motion for Summary Judgment, Attachment 1 to Affidavit of Martin J. Cerullo, Esq. The deposition testimony of two of Schuylkill Haven Borough's employees also confirms that the primary reason why the system has not yet been built is the pendency of this lawsuit, and that the people of Schuylkill Haven Borough have no intention of abandoning the plan to own their own cable system. *See* June 11, 1991 Deposition of Douglas R. Satterfield at 39; June 12, 1991 Deposition of Marlin Berger at 31.

The one contingency to which Schuylkill Haven Borough pointed which was not within its own control is that Schuylkill Haven Borough's plan to finance the cable system via a $500,000 note must be approved by the Pennsylvania Department of Community Affairs (the "DCA") before the note can actually be issued. Schuylkill Haven Borough argues that the contingency of the DCA's approval renders Warner Cable's claims unripe, since Schuylkill Haven Borough will not carry out the construction plan without approval of the note.[7]

We do not agree with defendant's view that the possibility that the DCA will refuse to authorize the note, and then Schuylkill Haven Borough will decide not to finance the construction through other means, is enough to render this case unripe. As a factual matter, Warner Cable has demonstrated a real and immediate threat by Schuylkill Haven Borough to build and operate a cable system, whether or not the DCA approves the note. Schuylkill Haven Borough has cash reserves of approximately $1,000,000 on hand—more than enough to build the system without incurring any debt that would require DCA

6. *See* Exhibit C of Complaint, Ordinance No. 892.

7. We will discuss later in this opinion Schuylkill Haven Borough's other argument relating to the DCA's role in this dispute—that we should refrain from deciding the legality of Schuylkill Haven Borough's proposed cable system ownership because the DCA, a state agency, will consider that issue in deciding whether or not to approve the note.

approval. *See* June 11, 1991 Deposition of Douglas R. Satterfield at 62.

In the case upon which Schuylkill Haven Borough relies, *Metzenbaum v. Federal Energy Regulatory Commission,* 675 F.2d 1282 (D.C.Cir.1982), the outstanding contingency made it impossible for the court to decide the claims presented. In that case, the D.C. Circuit found unripe a claim based on the takings clause of the Fifth Amendment challenging the validity of a law which might affect the manner in which the Federal Energy Regulatory Commission regulated rates for the sale of natural gas produced in Alaska. Plaintiffs alleged that the statute in question might hypothetically prevent the Commission from reducing rates that were unreasonably high, and might also allow consumers to be charged for the construction of gas pipelines before they received any gas. The court noted that as yet the Federal Energy Regulatory Commission had not yet been confronted with the hypothetical unjust rates or pre-billing for construction, and possibly never would have to face such a situation. It would be impossible to decide if forcing certain rates and charges on consumers was an unconstitutional taking without having the actual rates and charges before the court for consideration.

*Metzenbaum* stands for the familiar proposition that a court will not find a statute unconstitutional where it is not facially invalid, but merely capable of unconstitutional application. In contrast, the complaint before this court challenges the facial validity of Schuylkill Haven Borough's actions and intended actions in building the cable system, including the validity of Ordinance 892, authorizing issuance of a note to fund the cable television system. We are perfectly capable of evaluating the legality of Schuylkill Haven Borough's actions and proposed actions without knowing any additional facts. It will make no difference whatsoever in our analysis of the issue presented in this action if Schuylkill Haven Borough starts to operate a cable television system. Where deferring adjudication until the contingent events occur will add nothing material to the resolution of the legal issues presented, and there is otherwise sufficient adversity of interests, we will not force the parties to incur additional unnecessary costs of building a cable system and engaging in further litigation. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2634–2635, 57 L.Ed.2d 595 (1978) (prudential concerns of ripeness doctrine satisfied where a court will be in no better position later than it is now to decide the question).

Having found the requisite adversity of interests, we now turn to the other two strands of ripeness evaluation, the conclusiveness of the judicial judgment requested and the practical help, or utility, of that judgment. A declaratory judgment that Schuylkill Haven Borough does not have the authority to build and operate a cable television system, and an injunction prohibiting them from doing so, will be a binding resolution of this matter, conclusively establishing the rights and relations of the parties. Whether the DCA agrees with the judgment or not, Schuylkill Haven Borough will be bound to it and cannot proceed with the construction of the cable system.

The practical utility of such a judgment is plain. It will enable Plaintiff to preserve the status quo before irreparable injury is done. *See Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 648–49 (3d Cir.1990). This is very different from the *Step-Saver Data Systems Case,* where the Court of Appeals found that a judgment would have no present effect because the requested judgment was phrased as a contingency (defendants are liable *if* collateral actions establish defects in the product). *See* 912 F.2d at 644, 648.

B. Discretionary Dismissal under the Declaratory Judgment Act and Colorado River

Schuylkill Haven Borough urges this Court to abstain from rendering a decision in this case because there is a pending action before a state agency, the Pennsylvania DCA, involving the same issues as those raised in Plaintiff's Complaint. A federal court does have the discretion to refuse to issue a judgment that would in-

terfere in a pending state court action, but we do not agree with Schuylkill Haven Borough that this is a case that warrants such dismissal. Under the *Colorado River* doctrine a district court may abstain from exercising federal jurisdiction only in exceptional circumstances.

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citations omitted); *quoted in Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

The Supreme Court has identified four factors which might justify dismissal in favor of the state proceedings—1) assumption by either court of jurisdiction over any property, 2) convenience to the parties of litigating in the state forum, 3) avoidance of piecemeal adjudication, and 4) the order in which jurisdiction was obtained by the concurrent forums. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. at 19, 103 S.Ct. at 938–39. In the case at bar, we find that these factors weigh in favor of retaining jurisdiction in this court.

The DCA is not a court of law and does not afford the parties the convenience of a well-developed set of rules and procedures by which to resolve their dispute.[8] Piecemeal adjudication is quite likely if we relinquish jurisdiction because the DCA need not rule on the issue presented in this case in order to approve or disapprove the note. It is primarily a fiscal watchdog concerned with ensuring that municipalities do not overextend themselves financially, not a forum for the adjudication of the legal powers of those municipalities. The DCA would not have the power to grant Warner Cable an injunction against Schuylkill Haven Borough's construction and operation of a cable system, even if it did disapprove the note on the grounds that the operation of a cable system by a borough is unlawful. Thus, Warner Cable would be forced to go to another forum to obtain that injunction.

Finally there is a significant federal question at issue in this litigation—whether the federal Cable Act empowers Schuylkill Haven Borough to build and operate a cable television system. The DCA is not as appropriate a forum in which to litigate this issue of first impression. We will not avoid our duty to decide this important legal question merely because the DCA is theoretically required to consider the lawfulness of Schuylkill Haven Borough's proposed plan in making its decision. *See* 53 P.S. § 6780–401(b).

As for Schuylkill Haven Borough's argument that we should exercise our discretion under the Declaratory Judgment Act to refrain from hearing this case, we cannot agree. Warner Cable has requested not only a declaratory judgment, but also an injunction restraining Schuylkill Haven Borough from proceeding with its plan to operate a cable system. Such injunctive relief cannot be obtained in the alternative forum which Schuylkill Haven Borough suggests, even if the DCA did refuse to approve the proposed note on the ground that the purpose was unlawful. Much as we dislike intruding into the usual sphere of the Pennsylvania courts and deciding an

8. The Local Government Unit Debt Act governs the proceedings of the DCA in approving borough debt proposals. *See* 53 P.S. §§ 6780–1 *et seq.* Under § 6780–401, when a local government unit initiates proceedings for the incurring of debt, "any interested party may file with the department a ... complaint asserting the invalidity of such proceedings, or any part thereof." This appears to be the extent of Warner's rights under the Act. The right to file a complaint can hardly be equated with the right to a final adjudication on the merits, after an opportunity to present evidence and be heard, which Warner has in this court.

issue of first impression relating to the interpretation of the state Borough Code, we have a duty to give the Plaintiff a proper forum for adjudication of his claims, and the DCA is not an adequate substitute for a court of law. For the reasons stated above, we find that this Court is the most appropriate forum, and now is the most appropriate moment, for adjudicating this dispute.

### II. *Warner Cable's Motion for Summary Judgment*

Having decided to allow this case to proceed to adjudication on the merits, we now turn to Plaintiff's Motion for Summary Judgment. The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law.[9] 477 U.S. at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motions for summary judgment, the moving parties bear the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact disputes. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party—Defendant Borough of Schuylkill Haven in this case—must respond with facts of record that contradict the facts identified by the movant, and may not rest on mere denials. 477 U.S. at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

Schuylkill Haven Borough concedes that there is no genuine issue as to any material fact. (Oct. 17, 1991 Tr. at 36, Hearing on Motions to Dismiss and for Summary Judgment.) The material facts are as follows. For the past forty years, Warner Cable and its predecessors have been supplying cable television services to the residents of Schuylkill Haven. Presently, there are approximately 2450 subscribers in Schuylkill Haven Borough. On February 11, 1981, Schuylkill Haven Borough granted Warner Cable a ten year exclusive franchise (the "franchise") to provide cable television services within Schuylkill Haven Borough, and since that franchise expired in 1991 Schuylkill Haven Borough has authorized several extensions. Schuylkill Haven Borough and Warner Cable have been negotiating over the renewal of the franchise pursuant to the renewal provisions of the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.,* but the parties have been unable to come to an agreement about the terms of any renewal.

In February, 1990, the Borough Manager, Donald Munch, informed Warner Cable's lawyers that Schuylkill Haven Borough intended to construct and operate its own cable system and compete with Warner Cable. *See* Exhibit B to Motion for Summary Judgment, Affidavit of Martin J. Cerullo and attached letter from Donald Munch. After discussing various methods of financing the project, including paying for it out of Schuylkill Haven Borough's considerable cash reserves, the Borough Council then proceeded to solicit proposals to finance the project. *See* June 11, 1991

9. Pennsylvania law provides the rules of decision in this case under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Deposition of Douglas R. Satterfield at 72. On October 30, 1990 the Borough Council passed an ordinance authorizing a note in the amount of $500,000, to be purchased by Pennsylvania National Bank, for the purpose of "[c]onstruction and installation of a cable television system owned and operated by the [Borough of Schuylkill Haven]." *See* Exhibit E to Motion for Summary Judgment, Borough Ordinance No. 892. The next step was an application to the DCA for approval of the indebtedness. *Id.* The application is still pending before the DCA.

Schuylkill Haven Borough intends to build a cable system, and has started designing it and soliciting bids, but has not as yet begun construction. (Oct. 17, 1991 Tr. at 36, Hearing on Motions to Dismiss and for Summary Judgment.) Warner Cable will be injured if Schuylkill Haven Borough succeeds in building a cable system, because it will lose customers and the value of its property will decrease. *Id.* at 38.

A. Schuylkill Haven Borough's Authority Under State Law to Build and Operate a Cable Television System.

Plaintiff contends that it would be unlawful for Schuylkill Haven Borough to build and operate a cable television system because the legislature of Pennsylvania has not granted boroughs the power to do so. It is well established that Pennsylvania has adopted the *Dillon* rule, which states that "a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." *Borough of Scottdale v. National Cable Television Corp.,* 476 Pa. 47, 381 A.2d 859, 863 (1977) (Roberts, J., dissenting), quoting *In re Valley Deposit and Trust Comp.,* 311 Pa. 495, 498, 167 A. 42, 43 (1933), and citing *Lesley v. Kite,* 192 Pa. 268, 274, 43 A. 959, 961 (1899). "Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the [municipal] corporation, and therefore denied." *In re Appeal from Settlement and Audit of Auditors,* 74 Pa. Cmwlth. 614, 460 A.2d 904, 906–907 (1983), *cert. denied Silver v. Benson,* 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984), quoting *Kline v. Harrisburg,* 362 Pa. 438, 443–44, 68 A.2d 182, 184–85 (1949). The reason behind this strict rule is that a borough or other municipal corporation is not a sovereign with inherent powers, but rather a creature of the state. As such, it is completely subject to the state legislature's authority and may do only those things which the legislature has placed in its power. *In the Matter of Arbitration Between Borough of Ambridge and Police Dept.,* 53 Pa.Cmwlth. 251, 417 A.2d 291, 292 (1980); *Summerhill Borough v. Commonwealth, Dept. of Envtl. Resources,* 34 Pa. Cmwlth. 574, 383 A.2d 1320, 1323 (1978).

The general and specific powers of a borough are enumerated in the Borough Code at 53 P.S. §§ 46201 and 46202. Nowhere in those or any other sections is the power to build and operate a cable television system expressly granted to boroughs, with the sole exception of municipal cable systems already in operation on July 1, 1979, which are grandfathered in.[10] Defendant argues that the power to own and operate a cable system may nevertheless be fairly implied in the express power to regulate the streets and ways of the Borough granted in paragraph 17 of § 46202, but we are not persuaded by that argument. While the Pennsylvania Supreme Court did justify the power of boroughs to *regulate* cable television within their limits by referring to the streets and ways power,

10. Section 47471 permits boroughs to manufacture or supply electricity for commercial power purposes. There is no mention of electronic signals for telephones, cable television or the like, except the following: "Nothing in this act shall be construed so as to disallow any borough operating a cable television system as of July 1, 1979 from continuing to operate the same." If the legislature had intended this section or any other provision of the Borough Code to allow municipal cable systems to be established after July 1, 1979, they would have said so.

the courts of Pennsylvania have never extended the power to regulate the streets and ways to include the power to engage in the proprietary function of operating a cable system. *See Borough of Scottdale v. National Cable Television Corp.*, 476 Pa. 47, 381 A.2d 859, 862 (1977). The power to regulate a business or industry does not necessarily imply the power to own and operate a business in that industry, especially when that regulatory power is not expressly granted by the legislature, but is itself implied in another expressly granted power. Such a rule would give boroughs unlimited power. By way of example, sections 46202(21) and 46202(24) of the Borough Code give boroughs the power to adopt fire and building codes which could apply to many types of businesses within a borough, however such power to regulate would not be construed to empower a borough to engage in or operate any regulated business within the borough.

Nor can the power to build and operate a cable system be found in the third source of municipal powers—those essential to the declared objects and purposes of the corporation. While it would certainly be convenient to Schuylkill Haven Borough to be able to form its own cable company, it is not absolutely necessary. Schuylkill Haven Borough has managed to exist for many years now with a third party franchisee providing cable services, and that system, while perhaps less than optimal, is providing service.

Schuylkill Haven Borough cannot fairly argue that the legislature did not recognize the need for a special provision authorizing municipalities to operate cable systems—in fact, the legislature has repeatedly refused to enact introduced bills that would have empowered municipalities to do so.[11] While this fact alone is not dispositive, it, along with the legislature's express limitation concerning cable systems grandfathered in as existing prior to July 1, 1979, certainly suggests that the legislature of Pennsylvania, for whatever reason, did not wish to empower any more boroughs to operate cable systems. No matter how much we favor, as a matter of policy, allowing the citizens of boroughs and towns to compete with established cable companies by building their own cable systems, we are powerless to authorize their doing so when the legislature has refused to give them the power to do so. The function of courts is to interpret laws, not to make laws.

### B. Schuylkill Haven Borough's Authority Under Federal Law to Build and Operate a Cable Television System

Schuylkill Haven Borough contends that even if Pennsylvania law does not allow it to build its own cable system, the federal Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 *et seq.* (the "Cable Act") grants it that power. They point to section 533, subparagraph (e) of that act which reads:

> (1) Subject to paragraph (2), a State or franchising authority may hold any ownership interest in any cable system.
>
> (2) Any State or franchising authority shall not exercise any editorial control regarding the content of any cable service on a cable system in which such governmental entity holds ownership interest (other than programming on any channel designated for educational or governmental use), unless such control is exercised through an entity separate from the franchising authority.

Section 533 is devoted to setting out the circumstances under which owners of certain mass media outlets may own or control cable television services. It restricts owners of television broadcast stations within the same area, common carriers of wire and radio communications, and owners of

11. House Bill 1020, 1979 Session, contained such empowering language in two versions reported April 24, 1979 and June 29, 1979, but the final version which was enacted merely grandfathered in all then-existing municipal cable systems without authorizing new systems. *See* 53 P.S. § 47471. Senate Bill 1510, 1990 Session, would have amended the Borough Code to allow any borough to purchase, construct and operate a cable television system, and House Bill 1840, 1989 Session, would have empowered Third Class cities to do so. Neither has been enacted.

other media of mass communications which serve the same area in how they may operate cable television services, and preempts state and local governments from placing different or greater restrictions based on ownership or control of mass communications media.[12] Both the House and Senate Committee Reports on this section express the belief that section 533 is intended to protect the principles of the First Amendment, while at the same time eliminate unfairness and confusion by establishing uniform national rules to take the place of the myriad local systems of regulation then in existence. "The intent of the committee is to prevent any state or local cross-ownership or multiple ownership restrictions." S.Rep. No. 67, 98th Cong., 1st Sess., at 20 (1983) (the "Senate Report"). "Section 613 establishes clearly-defined cross-ownership rules and standards ...." H.R.Rep. No. 934, 98th Cong., 2nd Sess., at 55 (1984), U.S. Code Cong. & Admin.News 1984, p. 4692 (the "House Report"). The Senate Committee on Commerce, Science and Transportation also stated:

> [I]n any case in which a State, subdivision, and so forth, has or acquires any ownership interest, it is prohibited from owning or controlling, directly or indirectly, the content of any of the programming provided on such cable system except with respect to governmental access channels. The committee believes that Government control of the content of the programming on a Government-owned cable system is patently inconsistent with first amendment principles. No government, Federal, State, or local, should have the power or the ability to control news and information disseminated over any electronic medium. Therefore, the State, and so forth, have to establish an independent board or separate management company, and such board or company shall not include any State or local office holder.

Senate Report at 21.

The House Committee on Energy and Commerce expressed the same view in slightly different language:

> Section 613(e) enables a State or franchising authority to own a cable system, but bars the State or franchising authority from exercising any editorial control over the content of any cable service provided over that cable system (other that programming on any channel designated for educational or governmental use), unless the editorial control is exercised through an entity separate from the franchising authority. The Committee has included this requirement in order to preclude undue government control of programming contrary to the First Amendment.

House Report at 58, U.S.Code Cong. & Admin.News 1984, p. 4695.

We agree with Plaintiff that these passages from the legislative history, together with the context of the Act, indicate that Congress had no intention of granting powers to municipalities that the municipalities did not have under state law. The language "may hold any ownership interest" is permissive rather than empowering—it expresses Congress's decision that municipal ownership of cable television companies does not violate the first amendment, as long as the requirements of subsection (b) are met. Far from empowering local authorities, Congress wanted to restrict them from interfering with the First Amendment rights of their citizens by placing strict controls over any power the creating sovereign, the state, chose to grant them regarding the cable television industry. Subsection (e) was merely intended to make it perfectly clear that "any person" in subsection (d) (regarding states regulating ownership based on ownership of other mass communications media) included states and franchising authorities, as well as individuals and private corporations.

Thus, if municipalities in a state are otherwise able to own cable systems, the state cannot place restrictions on such ownership that are based on ownership or control of other media of mass communications, any

12. *Subsection (d) reads: "Any State or franchising* authority may not prohibit the ownership or control of cable systems by any person because of such person's ownership or control of any media of mass communications or other media interests."

more than the state can restrict private citizens from cross-ownership and multiple ownership of mass communications media. The state remains free to place other types of restrictions on its own municipalities, including a total ban on cable system ownership, as long as it does not base the regulation on cross or multiple media ownership. *See* Senate Report at 20–21 ("[S]ection 605 [later renumbered 613] provides that the prohibition of regulation of ownership of cable systems by any person is intended to apply to the ability of a State, subdivision, and so forth, to acquire or own a cable system.... States may establish rules to govern municipal ownership that are consistent with this section.")

There is no indication in the Act or in the legislative history that Congress intended to upset traditional spheres of state and federal power by granting new powers to the state's own creatures that the state did not wish them to have.[13] In the absence of a clearly expressed purpose to intrude into the internal affairs of a state, a court should not lightly infer such a purpose. Rather, "[w]e must assume that the implications and limitations of our federal system constitute a major premise of all congressional legislation, though not repeatedly recited therein.... Congress therefore will not be deemed to have significantly changed the federal-state balance ... unless otherwise the purpose of the Act would be defeated." *Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 643–44, 106 S.Ct. 2101, 2121, 90 L.Ed.2d 584 (1986), citing *United States v. Five Gambling Devices,* 346 U.S. 441, 450, 74 S.Ct. 190, 195, 98 L.Ed. 179 (1953) (opinion of Jackson, J.); *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971); *FTC v. Bunte Bros., Inc.,* 312 U.S. 349, 351, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941). "Unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the Federal–State balance." *Heublein, Inc. v. South Carolina Tax Comm'n,* 409 U.S. 275, 281–82, 93 S.Ct. 483, 487–88, 34 L.Ed.2d 472 (1972).

The power to create municipalities and define the limits of their powers is a quintessential state function. We will not read the Cable Act broadly to extend the powers of a Pennsylvania municipality where Congress has not clearly expressed an intent to do so. Because we find no intent in the Cable Act to empower Schuylkill Haven Borough to own and operate a cable system, we do not need to reach Plaintiff's argument that it would be unconstitutional for Congress to grant a municipality a power the state has denied it.

Based on our finding that Schuylkill Haven Borough presently has no authority to build, own or operate a cable television system under either state or federal law, we will grant summary judgment in favor of the Plaintiff on Counts II and III of the Complaint.[14] In order to grant the injunctive relief requested, the court must find both that irreparable injury will occur without the injunction and that Plaintiff has no adequate remedy at law, and the court must balance the competing claims of injury and the public interest. *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 82 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *Natural Resources Defense Coun-*

13. We note that in § 556 Congress has preempted any state or local law inconsistent with the Cable Act, but has also provided that the Cable Act shall not be "construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter," nor should it be construed "to affect any authority of any State ... regarding matters of public health, safety and welfare, to the extent consistent with the express provisions of this subchapter." The Pennsylvania law prohibiting boroughs from owning and operating cable systems is consistent with the Cable Act, and so is not preempted.

14. Because our conclusions on Counts II and III are sufficient to support granting the requested injunctive and declaratory relief, it is not necessary to reach Warner's breach of contract claims, which now appear to be moot. We note, however, that Warner has not demonstrated that there are no material facts in dispute and that it is entitled to judgment as a matter of law with regard to Count I. There is insufficient evidence in the record to show that the Borough breached the franchise agreement.

*cil, Inc. v. Texaco Refining and Marketing, Inc.*, 906 F.2d 934, 941 (3d Cir.1990).

Absent an injunction, it is very likely that Schuylkill Haven Borough will build a cable system that will compete directly with Warner Cable's system, causing Warner Cable to lose customers and good will, and diminishing the value of Warner Cable's significant investment in the current cable system. Warner Cable would not be adequately compensated for these losses in an action at law. In balancing the competing claims of injury and the interest of the public, we take into account not only the public's interest in requiring local governments to stay within the powers granted to them by the legislature, but also the resources that will be conserved if Schuylkill Haven Borough is restrained now, before it has made a large investment in building a cable system. If we refuse to enjoin the construction now, the citizens of Schuylkill Haven Borough could eventually be forced to dismantle the system or pay a money damages judgment.

For the reasons stated above, the defendant's Motion to Dismiss is denied and Plaintiff's Motion for Summary Judgment is granted.