**COLONIAL COURTS APARTMENT COMPANY, Don Fisher Manor, Susan M. Friedman, individually and as Trustee for Mark Milstein, Robert Milstein, and American National Bank, Plaintiffs,**

v.

**Maurice C. PARADIS, Director of the Rhode Island Department of Business Regulation, as Permanent Receiver for Marquette Credit Union, Defendant.**

Civ. A. No. 91–0535L.

United States District Court,
D. Rhode Island.

Jan. 7, 1992.

Michael DiBiase, Joseph Cavanaugh, John Blish, Blish & Cavanaugh, Providence, R.I., for plaintiffs.

Brenda Cotter, Elizabeth Ritvo, Brown, Rudnick, Freed & Gesmer, Boston, Mass., Andrew Hodgkin, William Dolan, Brown, Rudnick, Freed & Gesmer, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

## I. INTRODUCTION

This case grows out of Rhode Island's current banking crisis. Plaintiffs allegedly hold an unsecured claim of $1.3 million against the receivership estate of Marquette Credit Union ("Marquette"), based on certain standby letters of credit issued in 1990. The Governor of Rhode Island closed Marquette on January 1, 1991, because Marquette's deposit insurer had become insolvent and Marquette lacked federal insurance. Defendant Paradis was appointed as Marquette's receiver several months later because it was insolvent. The order appointing Paradis as Marquette's receiver required all unsecured creditors to file claims against Marquette with the receiver by a certain date. Plaintiffs have complied with this requirement.

Plaintiffs filed this action to enjoin any distribution of Marquette's assets to depositors, which defendant planned to make in accordance with Rhode Island Gen.Laws ch. 19–15, as amended by the Rhode Island Depositors' Economic Protection Act ("DEPCO") of February 8, 1991, R.I.Pub.L. 1991, ch. 3, § 1. The DEPCO Act's scheme for distribution of Marquette's assets gives lowest priority to claims of unsecured general creditors and holders of deposits above $100,000, which would not be insured by the Federal Deposit Insurance Act, 12 U.S.C. § 1813(m). R.I.Gen.L. § 19–15–7(a)(6) (Supp.1991). The Act gives a higher priority to claims on deposits of $100,000 or less. *Id.* § 19–15–7(a)(4).

Plaintiffs allege that the DEPCO Act, in allowing Marquette's depositors of $100,-

000 or less to receive payment of their unsecured claims as a priority will leave virtually no remaining assets for plaintiffs and other unsecured creditors. Plaintiffs charge that DEPCO's payout scheme violates the United States Constitution, specifically the contracts clause of Article I, Section 10; the due process and takings clauses of the Fifth and Fourteenth Amendments; and the equal protection clause of the Fourteenth Amendment. It is evident that if the DEPCO Act had not been enacted, plaintiffs would have shared equally in the receivership assets along with all depositors. Plaintiffs' counsel estimated that all those unsecured creditors would have received about 75% of their claims. Now, by virtue of the DEPCO Act, depositors of $100,000 or less will receive 100% of their deposits, and unsecured creditors such as plaintiffs will be paid substantially less than 75% of their claims, if anything at all, when the receivership is concluded.

The DEPCO Act reaffirms that the Rhode Island Superior Court has jurisdiction of the receivership proceedings involving Rhode Island financial institutions. R.I.Gen.L. § 19–15–7(a) (Supp.1991). In this case, the Superior Court is supervising Marquette's receivership proceedings.

After a hearing on October 29, 1991, this Court denied plaintiffs' request for a preliminary injunction against a distribution of some of Marquette's assets to depositors, finding no risk of irreparable harm because ample funds remained in the receivership estate to cover plaintiffs' claims. Defendant then moved to stay this federal action. He argues that a stay is appropriate at least until it has been determined in state court whether plaintiffs have a valid unsecured claim against Marquette's estate. Following a hearing, this Court took the matter under advisement and ordered a temporary stay in these federal proceedings. For the following reasons, the Court now extends the stay indefinitely.

## II. DISCUSSION

■ A federal district court should abstain from ruling on constitutional questions whenever state judicial proceedings involving important state interests have been initiated, substantive proceedings on the merits have not yet taken place in the federal court, and the state proceedings afford an adequate opportunity to raise the constitutional claims. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (quoting *Moore v. Sims*, 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979)); *Medical Malpractice Joint Underwriting Ass'n of R.I. v. Pfeiffer*, 832 F.2d 240, 243 (1st Cir.1987). This rule, known as the *Younger* abstention doctrine,[1] is based on interests of federalism and comity. *Hawaii Hous. Auth.*, 467 U.S. at 237, 104 S.Ct. at 2327. American federalism embodies:

a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). The *Younger* rule "is designed to 'permit state courts to try state cases free from interference by federal courts,' particularly where the party to the federal case may fully litigate his claim before the state court." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (quoting *Younger*, 401 U.S. at 43, 91 S.Ct. at 750).

■ The existence of a federal constitutional issue does not, by itself, counsel taking the dispute away from the state courts, particularly when the proceedings implicate important state interests. *Middlesex County Ethics Comm.*, 457 U.S. at 431–32, 102 S.Ct. at 2520–21; *Pfeiffer*, 832 F.2d at 243. The determinative inquiry is whether

---

1. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27    L.Ed.2d 669 (1971).

the state proceedings afford plaintiffs an adequate opportunity to raise their constitutional claims. *Middlesex County Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521. Although the Rhode Island Supreme Court has upheld the constitutionality of the DEPCO Act in an advisory opinion, *In re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943 (R.I.1991), there is no reason to believe that the Rhode Island Court will not protect plaintiffs' constitutional rights in this case when it has a concrete factual situation presented to it. As the U.S. Supreme Court has stated, "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.* 457 U.S. at 431, 102 S.Ct. at 2521 (emphasis in original). And if the state courts somehow fail in this duty, plaintiffs may always return to federal court for the injunction they seek or other appropriate forms of relief.

■ Even if there were no parallel state proceedings, the doctrine of ripeness, rooted in Article III, Section 2, of the U.S. Constitution, limits the jurisdiction of federal courts to actual "cases and controversies." In order to satisfy this requirement, a plaintiff must first allege a threatened injury that is "sufficiently real and immediate" and not merely "conjectural" or "hypothetical." *Medical Malpractice Joint Underwriting Ass'n of R.I. v. Paradis*, 756 F.Supp. 669, 674 (D.R.I.1991). The determination, by necessity, is made on a case-by-case basis. *Id.*

■ The constitutional questions raised in plaintiffs' complaint are not ripe for adjudication by this Court. Defendant has not yet proposed a payout scheme for general creditors, nor has he even had an opportunity to examine the merits of plaintiffs' claims on the letters of credit. If the receiver honors the plaintiffs' claims on the letters of credit, then plaintiffs' constitutional claims will be ready for adjudication. If the receiver rejects plaintiffs' claims on the letters of credit, then they must litigate that dispute through the state courts before a constitutional issue arises. If the final result in the state courts is that plaintiffs have no valid claims under state law, then this Court will never have to hear this matter.

In short, no one knows at this time whether plaintiffs will be denied their proper share of Marquette's assets, but state court proceedings will certainly produce an answer. If plaintiffs, in fact, receive the same amount that they would have received had the DEPCO Act not become law, then this case will be moot. In this sense, plaintiffs' constitutional claims involve uncertain or "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985) (quoting 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532 (1984)); *Terra Nova Ins. Co. v. DiStefano*, 663 F.Supp. 809, 810 (D.R.I.1987) (quoting same). No constitutional injury has occurred yet, and the threatened constitutional injury is not "certainly impending." *Thomas*, 473 U.S. at 581, 105 S.Ct. at 3333.

■ As a second requirement of the ripeness doctrine, the Court must consider the hardship to plaintiffs of withholding the federal court's consideration. *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Terra Nova Ins.*, 663 F.Supp. at 810. Postponing a decision by this Court will not require plaintiffs to endure great hardship. Plaintiffs do not face the dilemma, frequently seen in ripeness cases, of choosing between, on one hand, detrimentally changing their behavior in order to comply with a law and, on the other hand, refusing to comply with the law and risking the initiation of a proceeding against them. *See Hastings v. Judicial Conference of U.S.*, 770 F.2d 1093, 1102 (D.C.Cir.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). This Court determined on October 29, 1991, that plaintiffs will suffer no irreparable harm so long as assets sufficient to satisfy their letter of credit claims remain in Marquette's estate. By litigating all of their claims in state court, plaintiffs lose nothing except the

possible expense of future activity here in federal court should the state courts not protect their constitutional rights.

Postponing a decision by this Court also serves the important public interests of having all the claims on Marquette's assets resolved in one forum and allowing the state courts to interpret and apply an important new state law.

The state proceedings might "make resolution of the federal constitutional questions unnecessary by their construction" of the DEPCO Act. *Hawaii Hous. Auth.*, 467 U.S. at 237, 104 S.Ct. at 2327. The state courts could do this either by finding the statute unconstitutional as applied to plaintiffs' claims or by ruling that plaintiffs, as a matter of state substantive law, have no valid claim on Marquette's assets. Although abstention is not appropriate when there is only "a bare, though unlikely, possibility that the state courts *might* render adjudication of the federal question unnecessary," abstention is necessary if "the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Id.* (emphasis in original). "It is a basic precept of federal jurisprudence that courts should eschew the needless resolution of constitutional questions if the pending case or controversy is susceptible to resolution on less sweeping state grounds." *Fischer v. McGowan*, 585 F.Supp. 978, 984 (D.R.I.1984).

Ideally, this Court should not consider the constitutional questions until they can be presented as purely legal issues, free from any factual dispute. *See Abbott Lab.*, 387 U.S. at 149, 87 S.Ct. at 1515. The Court must avoid determining the state statute's constitutionality "in broader terms than are required by the precise facts to which the ruling is to be applied," and so the Court should wait until the case "tenders the underlying constitutional issues in clean-cut and concrete form." *Hastings*, 770 F.2d at 1100–1101 (quoting *Rescue Army v. Municipal Court of L.A.*, 331 U.S. 549, 569, 584, 67 S.Ct. 1409, 1419, 1427, 91 L.Ed. 1666 (1947)). Even if the state proceedings do not make plaintiffs' constitutional claims moot, the state pro-

ceedings will at least focus the constitutional questions for a later examination by this Court.

It is not known yet how the final distribution of Marquette's assets will break down. Federalism, respect for state processes, efficient management of judicial resources, and common sense all compel abstention at this time.

### III. CONCLUSION AND ORDER

Accordingly, defendant's motion to stay these proceedings is granted. The temporary stay, which the Court granted on December 3, 1991, is indefinitely extended until further order of this Court.

It is so ordered.