**BANK OF NEW ENGLAND—OLD COLONY, N.A., and Federal Deposit Insurance Corp., as Receiver, Plaintiffs**

v.

**R. Gary CLARK, Tax Administrator of the State of Rhode Island, Defendant.**

**Civ. A. No. 91–408L.**

United States District Court, D. Rhode Island.

June 15, 1992.

---

Mark A. Pogue, Alfred Samuel Lombardi, Edwards & Angell, Providence, R.I., for plaintiffs.

Bernard J. Lemos, Marcia McGair Ippolito, R.I. Div. of Taxation, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

### I.  INTRODUCTION

This case presents a thought-provoking issue arising out of an apparent conflict between the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1819 (1988 & Supp. I 1989), and the principles of comity and abstention embodied in the Tax Injunction Act of 1937, 28 U.S.C. § 1341 (1988). Plaintiffs are the Bank of New England— Old Colony, N.A. ("BNE") and its receiver, the Federal Deposit Insurance Corporation ("FDIC").  Defendant is R. Gary Clark, Rhode Island's Tax Administrator.  Plaintiffs claim that Rhode Island owes BNE a refund for state bank excise taxes paid for calendar year 1987.

This case really started on September 15, 1988, when BNE filed its Bank Excise Tax Return for the calendar year 1987 with the Rhode Island Tax Division, claiming a refund for taxes already paid.  In October of 1988, a partial refund was issued to BNE. BNE contested this decision because it

wanted a larger refund. It requested and received an administrative hearing. Thereafter, the Tax Administrator issued a Final Decision and Order on August 15, 1990, in which he affirmed the previous decision and denied BNE's claim for an additional refund. BNE then filed a complaint in the Rhode Island District Court, Sixth Division, seeking a de novo review of the Tax Administrator's Decision under applicable state law.

In January 1991, while review of the administrative Decision was pending before the Rhode Island District Court, BNE was declared insolvent. The FDIC became BNE's receiver in July 1991, and the FDIC removed the case to this Court in August 1991.

Defendant moved to dismiss the case or to remand it to the Rhode Island District Court, contending that the Tax Injunction Act prohibits federal courts from adjudicating state tax disputes. The FDIC opposed the motion, arguing that FIRREA gives the FDIC extremely broad powers, confers jurisdiction on this Court to hear the matter, and provides an implicit exemption from the Tax Injunction Act.

The matter was referred to a Magistrate Judge for consideration under 28 U.S.C. § 636 and Fed.R.Civ.P. 72. On February 24, 1992, Magistrate Judge Hagopian issued a Memorandum and Order, concluding that the matter was properly removed to this Court and, therefore, defendant's motion to remand had to be denied. On the same date he issued a Report and Recommendation to the effect that since this Court has jurisdiction of the matter, defendant's motion to dismiss should be denied. The defendant then filed an objection to the denial of the motion to remand (effectively an appeal) as well as an objection to the Recommendation that the motion to dismiss be denied, thus bringing the whole matter before this Court for review.

Briefs were filed by both sides, and the Court heard oral arguments and thereafter took the matter under advisement. It is now in order for decision.

Only a few other courts have faced this clash between FIRREA and the Tax Injunction Act. Courts that have considered the problem have reached different conclusions. *See, e.g., Federal Deposit Ins. Corp. v. New York,* 732 F.Supp. 26, 28 (S.D.N.Y.1990) (Tax Injunction Act requires dismissal of FDIC's suit from federal court, despite FIRREA), *aff'd,* 928 F.2d 56 (2d Cir.1991); *Federal Deposit Ins. Corp. v. City of New Iberia,* 921 F.2d 610, 613 (5th Cir.1991) (FDIC is exempt from Tax Injunction Act). In the First Circuit, this is apparently a question of first impression.

The problem raises difficult questions of statutory interpretation, the relationship between federal and state governments, and the nature and powers of the FDIC. For the reasons that follow, the Court concludes that, under FIRREA, the Court has jurisdiction of cases involving the FDIC even when no federal question is presented. However, under the Tax Injunction Act, this Court is powerless to resolve this particular controversy involving state taxes and, therefore, the only equitable solution to this impasse is to remand the case to the state courts, where this dispute can be resolved.

## II. DISCUSSION

### A. *Background Facts and Standard of Review*

The facts relevant to this matter are not in dispute. The FDIC, as receiver for BNE, challenges a state tax that was imposed on BNE in 1987. It raises an issue purely of state law. A review of the administrative proceedings was underway in the Rhode Island courts before the FDIC removed the action to this Court in 1991.

■■ This Court reviews the Magistrate Judge's Report and Recommendation de novo. Fed.R.Civ.P. 72(b). It normally reviews a Magistrate Judge's decision to deny a motion to remand under a "clearly erroneous" standard, but since only questions of law are presented here, a de novo standard applies in this case. *See* 28 U.S.C. § 636 (1988).

### B. *FIRREA*

With the 1989 enactment of FIRREA,[1] Congress granted the FDIC's wish list, which included substantially expanded jurisdiction for the federal courts to hear claims brought or removed by the FDIC. *Pima Fin. Serv. Corp. v. Intermountain Home Sys., Inc.,* 786 F.Supp. 1551, 1557 (D.Colo.1992); *see also National Credit Union Admin. Bd. v. Regine,* 749 F.Supp. 401, 410 (D.R.I.1990). The Court must follow FIRREA's jurisdictional commands.

When the FDIC removed the action to this Court,[2] FIRREA provided:

> Except as provided in subparagraph (D), the [FDIC] may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.

12 U.S.C. § 1819(b)(2)(B) (1988 & Supp. I 1989). Subparagraph (D), which applies to receivership of state-insured institutions, is not relevant to this case. FIRREA also provides:

> The [FDIC], in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28, without regard to whether the [FDIC] commenced the action.

*Id.* § 1819(b)(1). Section 1345 of Title 28 sets forth:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345 (1988).

This is extremely clear and direct language. The broad jurisdictional grant of section 1819 applies to any action removed by the FDIC and, except as otherwise provided by another federal statute, all claims brought by the FDIC in any capacity. 12 U.S.C. § 1819(b) (1988 & Supp. I 1989), 28 U.S.C. § 1345 (1988). Clearly, Congress

wanted the federal courts to have jurisdiction of all cases in which the FDIC is a party. *See Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78, 80 (5th Cir.1990).

### C. *The Tax Injunction Act, Comity, and Abstention*

■ The Tax Injunction Act, 28 U.S.C. § 1341, broadly prohibits federal district courts from adjudicating a taxpayer's challenge to a state tax. This law normally requires the federal courts to dismiss or remand all state tax claims. *See, e.g., Keating v. Rhode Island,* 785 F.Supp. 1094 (D.R.I.1992). The statute provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1988).

The Tax Injunction Act is certainly relevant to this dispute. Any action by this Court granting plaintiffs their requested tax refund, including a declaratory judgment, would "restrain the assessment, levy or collection of a tax under State law." *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982); *United Gas Pipe Line Co. v. Whitman,* 595 F.2d 323, 325–26 (5th Cir.1979); *Keating,* 785 F.Supp. at 1097. This Court has already determined conclusively that Rhode Island's procedures for challenging state taxes meet the other requirements of section 1341. *Keating,* 785 F.Supp. at 1097; *Sterling Shoe Co. v. Norberg,* 411 F.Supp. 128, 132–33 (D.R.I.1976); *Fruit Growers Express Co. v. Norberg,* C.A. No. 78–0045 (D.R.I.1981).

■ In addition to the Tax Injunction Act, longstanding principles of federalism also weigh against litigating this dispute in federal court. American federalism embodies:

---

**1.** Pub.L. 101–73, Title II, § 209(4), 103 Stat. 183, 216–17 (Aug. 9, 1989).

**2.** In December 1991, several months after the FDIC removed the suit to this Court, Congress added a 90–day deadline to FIRREA's removal

provision. Pub.L. 102–242, Title I, § 161(d), 105 Stat. 2286 (Dec. 19, 1991). In this case, even if the 90–day requirement were applied retroactively, the FDIC has met it.

a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), *quoted in Colonial Courts Apartment Co. v. Paradis*, 780 F.Supp. 88, 90 (D.R.I.1992). To preserve this political balance, federal courts should permit state courts to adjudicate state-law cases free from federal interference, especially when the parties may fully litigate their claims in state court. *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975); *Younger*, 401 U.S. at 43, 91 S.Ct. at 750. A federal district court should abstain from ruling on claims, even those involving federal constitutional questions, whenever ongoing state judicial proceedings involving important state interests have been initiated, substantive proceedings on the merits have not yet taken place in the federal court, and the state proceedings afford an adequate opportunity to raise the federal claims. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Medical Malpractice Joint Underwriting Ass'n of R.I. v. Pfeiffer*, 832 F.2d 240, 243 (1st Cir. 1987); *Colonial Courts*, 780 F.Supp. at 90. The grounds for abstention are even more compelling when the dispute centers on a pure question of state law. *Federal Reserve Bank of Boston v. Commissioner of Corp. & Taxation*, 499 F.2d 60, 64 (1st Cir.1974).

■ The Tax Injunction Act's prohibitions are closely related to the abstention doctrine. *See generally Keating*, 785 F.Supp. at 1097. For state tax disputes, the Tax Injunction Act codified a jurisdictional rule that had previously been a judicial policy of comity and restraint. *See United Gas Pipe Line*, 595 F.2d at 324–25.

The statute does not, however, subsume the common law doctrine or codify every aspect of the traditional principles. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 525, 101 S.Ct. 1221, 1235, 67 L.Ed.2d 464 (1981). The Tax Injunction Act does not alter the federal courts' duty to employ principles of comity and abstention. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943), *cited in United States v. State Tax Comm'n*, 481 F.2d 963, 972 (1st Cir.1973). Most importantly, the Tax Injunction Act does not alter the "federal instrumentalities" exception to the traditional doctrines of comity and abstention.

### D. The Federal Instrumentalities Exception

■ Section 1341 and the principles upon which it is based are subject to a significant federal common law exception. When a state attempts to tax an instrumentality of the federal government that, under the Constitution or a federal statute, is exempt from state taxation, the instrumentality may pursue its claim in federal court despite the Tax Injunction Act. *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966); *see also State Tax Comm'n*, 481 F.2d at 975; *Federal Deposit Ins. Corp. v. New York*, 928 F.2d 56, 58–59 (2d Cir.1991). The rationale for grafting this common law exception onto a clearly worded federal statute is the presumption that Congress would not deny the United States access to its own courts without explicitly saying so. *See Housing Auth. of Seattle v. Washington Dep't of Revenue*, 629 F.2d 1307, 1310–11 (9th Cir.1980).

■ The federal instrumentality exception does not apply in this case. Although it is a tax-exempt federal agency, the FDIC is not always entitled to this exception. The exception is limited to federal instrumentalities that challenge state taxes on the basis of a federal statute or the Constitution. In the words of the Supreme Court, the Tax Injunction Act does not apply to suits brought "by the United States to protect itself and its instrumental-

ities from *unconstitutional* state exactions." *Department of Employment*, 385 U.S. at 358, 87 S.Ct. at 467 (emphasis added); *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1639–70, 48 L.Ed.2d 96 (1976). The First Circuit Court of Appeals has recognized "the absence of any bright line" to determine whether an agency is entitled to the federal instrumentality exception. *Federal Reserve Bank of Boston*, 499 F.2d at 64. Whether the exception applies to the FDIC depends upon the FDIC's functions, its exposure to the state tax, and whether the state tax calls into question the sovereign interests of the United States.

In this case Rhode Island has not attempted to tax the FDIC. The State has taxed BNE, a private corporation. Significantly, this dispute involves no question of intergovernmental tax immunity under the Constitution or a federal statute. The federal instrumentalities exception does not apply when the FDIC, as receiver, challenges a state tax imposed on a private institution that is not a federal instrumentality. *See FDIC v. New York*, 732 F.Supp. at 28; *accord Pima Fin. Serv.*, 786 F.Supp. at 1560–61.

Because the FDIC does not qualify for the federal instrumentalities exception in this case, the Tax Injunction Act applies to the FDIC's claim. Therefore, the Court must now reconcile the Tax Injunction Act with FIRREA.

### E. The Tax Injunction Act and FIR-REA

■ FIRREA and the Tax Injunction Act seem to express conflicting Congressional intentions, but the statutes are not irreconcilable. FIRREA grants jurisdiction, while the Tax Injunction Act is a rule of abstention.

The Tax Injunction Act does not mention jurisdiction. Many courts, however, have interpreted it as a jurisdictional statute. *See, e.g., Grace Brethren Church*, 457 U.S. at 396, 102 S.Ct. at 2501–02 (Tax Injunction Act "deprive[s] the District Court of jurisdiction" to hear challenges to state tax

laws); *Rosewell*, 450 U.S. at 522, 101 S.Ct. at 1233–34 (purpose of Tax Injunction Act is "to limit drastically federal district court jurisdiction" to interfere with collection of state taxes); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Johnson & Cravens, 13911, Inc.*, 858 F.2d 1010, 1014 (5th Cir. 1988) (discussing "section 1341's extensive prohibition of federal jurisdiction over state tax matters"); *Housing Auth. of Seattle*, 629 F.2d at 1310 ("finding that the [Tax Injunction] Act is applicable would effectively eliminate federal jurisdiction").

Nonetheless, this Court should not ignore the distinction between an abstention statute—such as the Tax Injunction Act—and a jurisdiction statute merely because other, higher courts have used the word "jurisdiction" to describe the Tax Injunction Act's effect. In those cases, the courts did not confront a conflict between rules of jurisdiction and abstention; those courts had no need to sort out the differences. When those courts said that the Tax Injunction Act deprives a federal court of jurisdiction to hear state tax matters, they were using *jurisdiction* as shorthand for *power or authority to grant relief.*

This distinction between a court's jurisdiction and its power or authority to grant relief is subtle, but it is not meaningless. When a court lacks power to grant relief, the effect is the same as if the court lacked jurisdiction, and vice versa. But a court may possess jurisdiction while lacking the authority to use it. Jurisdiction is a prerequisite to, not the equivalent of, a court's authority to grant relief. Jurisdiction and abstention are separate concepts, and they are not contradictory.

A comparison to federal diversity jurisdiction clarifies this point. Section 1332 of Title 28 gives the federal district courts "original jurisdiction of all actions" involving disputes above $50,000 between parties of diverse citizenship. This language is as broad and direct as the words of 12 U.S.C. § 1819. Moreover, unlike 12 U.S.C. § 1819, the diversity statute does not weaken its force with such deferential words as "[e]xcept as otherwise provided by Act of Congress." FIRREA's jurisdiction provi-

sions are no more absolute than those of the diversity statute. And there is no doubt that the federal courts can and routinely do abstain from deciding claims although federal diversity jurisdiction exists.

This Court's recent decision in *Colonial Courts,* 780 F.Supp. 88, exemplifies the compatibility of jurisdiction with the principles of abstention. In that case, this Court had both diversity and federal question jurisdiction, but the undisputed jurisdiction did not prevent the Court from abstaining in deference to ongoing state proceedings. *Id.* at 92. Similarly, in the present action, there is no inconsistency in concluding that 12 U.S.C. § 1819 gives the Court jurisdiction over the FDIC's claim, while also deciding that the Tax Injunction Act and its related doctrines prevent the Court from granting relief. *See, e.g., United States v. City of New York,* 175 F.2d 75, 77 (2d Cir.) ("the existence of jurisdiction is not enough" to avoid Tax Injunction Act), *cert. denied,* 338 U.S. 885, 70 S.Ct. 189, 94 L.Ed. 543 (1949).

When it is understood that jurisdiction does not preclude abstention, it becomes clear that FIRREA and the Tax Injunction Act do not conflict. There is, therefore, no basis for presuming that Congress intended FIRREA's jurisdiction provisions to cut into the Tax Injunction Act. Moreover, FIRREA's sweeping jurisdictional provisions are less specific than the Tax Injunction Act. In FIRREA Congress did not state explicitly that, in addition to unfettered access to the federal courts, the FDIC should also enjoy immunity from the federalist principles of comity and abstention, as embodied in the Tax Injunction Act. Without such language, FIRREA cannot trump the Tax Injunction Act.

The First Circuit Court of Appeals confronted a statute similar to FIRREA in *Federal Reserve Bank of Boston,* 499 F.2d at 63. Massachusetts had taxed certain transactions of the Federal Reserve Bank, and the Bank sought to contest the constitutionality of the tax in federal court. The federal statute at issue, 12 U.S.C. § 632, granted the Federal Reserve Bank unfettered access to the federal courts. De-

scribing this statute, the Circuit Court stated, "Congress has made it plain by express statute that a federal reserve bank is to have unrestricted access to the district courts" and that "[s]uch a clearly expressed strong federal interest in litigating all reserve bank business in the federal courts further tips the scale away from the general hostility to interfering with a state taxing scheme." *Id.*

*Federal Reserve Bank of Boston* did not address the determinative question in this case. The Court of Appeals explained that the Federal Reserve Bank's dispute was largely, if not entirely, a federal question: whether Massachusetts had taxed the federal government in violation of a federal statute and the Constitution. *Id.* at 60. It was a classic federal instrumentalities case, thereby distinguishable from the present lawsuit.

But the Court then added, in dicta, that "were the case to raise a pure question of state law ... we might think it wise to require abstention by the district court pending litigation of the state issue in the state court. *Abstention in such circumstances is appropriate even when the United States is a party.*" *Id.* at 64 (emphasis added).

The reasoning of *Federal Reserve Bank of Boston* supports the conclusion that the Tax Injunction Act applies despite FIRREA's broad jurisdictional grant in this case. The Court of Appeals acknowledged that Congress had sought to provide federal jurisdiction for all cases involving the Federal Reserve Bank and held that jurisdiction was proper. But the Court then softened its conclusion by noting that it would have ruled differently had the dispute involved solely a question of state law—as in the present lawsuit. Implicitly, the First Circuit's dicta embraced the notion that, unless the federal instrumentalities exception is available, the Tax Injunction Act requires abstention even when a federal statute provides federal court jurisdiction in the broadest possible terms.

This Court cannot grant plaintiffs the relief they seek. The Tax Injunction Act ties the Court's hands. As a subtle, techni-

cal matter, this Court has jurisdiction to entertain the FDIC's claim, just as the Court had jurisdiction to entertain the plaintiffs' claims in *Colonial Courts,* 780 F.Supp. 88, and *Keating,* 785 F.Supp. 1094. But jurisdiction is not enough. *See City of New York,* 175 F.2d at 77. Like other jurisdictional statutes, FIRREA allows the FDIC to enter this Court; the Tax Injunction Act, however, ultimately forces the FDIC to return to the state courts.

Since there are no ongoing state proceedings, this Court has neither the obligation nor even the option to stay the federal action to allow state litigation to run its course. *D'Amario v. Russo,* 718 F.Supp. 118, 124 (D.R.I.1989). Dismissal, moreover, might cast this lawsuit into state court limbo. Instead, a remand of this lawsuit, which is really a state administrative appeal, is the most appropriate way to get this controversy finally resolved.

### III. CONCLUSION AND ORDER

Accordingly, defendant's objection to the Magistrate Judge's Report and Recommendation is overruled, but defendant's appeal of the Magistrate Judge's denial of the motion to remand is sustained. Therefore, this action is hereby remanded to the Rhode Island District Court, Sixth Division. It is so ordered.