**ERNST & YOUNG**

v.

**DEPOSITORS ECONOMIC PROTEC-
TION CORPORATION, et al.**

Civ. A. No. 93–0400B.

United States District Court,
D. Rhode Island.

June 3, 1994.

John E. Bulman, Peter J. McGinn, Tillinghast, Collins & Graham, Providence, RI, Jerome G. Snider, Washington, DC, and Daniel F. Kolb, Davis, Polk & Wardwell, New York City, for plaintiff.

Leonard Decof, Decof & Grimm, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

FRANCIS J. BOYLE, Senior District Judge.

Plaintiff, Ernst & Young, Inc. ("E & Y") brought this action for declaratory relief, asking this Court to declare R.I.GEN.LAW 42–116–40 unconstitutional. The statute purports to limit contribution rights of tortfeasors liable in suits brought by a public corporation, the Depositors Economic Protection Corporation ("DEPCO"). The defendants, DEPCO, Governor Bruce Sundlun ("Sundlun") and Richard Gaskill ("Gaskill") have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, or in the alternative, request that this Court abstain from hearing the action. Magistrate Judge Timothy M. Boudewyns, conducted a hearing and issued a Report and Recommendation, recommending dismissal. Plaintiff has objected to the Report and Recommendation on a number of grounds, including the reports of no subject matter jurisdiction, that the claims are unripe, that abstention is appropriate, and that the statute is identical to a provision of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) as amended by the Superfund Amendments and Reauthorization Act (SARA). 42 U.S.C. § 9613(f). For the reasons set forth below, I adopt the recommendation of the Magistrate Judge.

### I. FACTS

The court substantially adopts the statement of facts as reported by the Magistrate Judge.

On January 1, 1991, Governor Bruce Sundlun proclaimed a banking emergency in the State of Rhode Island ("the State") and ordered the closing of the Rhode Island Share and Deposit Indemnity Corporation ("RISDIC") which insured the deposits of forty-five state financial institutions. The Governor ordered the forty-five institutions closed forthwith. Thousands of depositors could not withdraw their money. In response to this emergency, the Rhode Island General Assembly passed legislation creating DEPCO, the Depositors Economic Protection Corporation. R.I. GEN.LAW §§ 42–116–1 *et seq.* DEPCO is a public corporation obligat-

ed to repay depositors for deposits in the failed institutions. The DEPCO legislation created not only DEPCO, but also an entirely new financial institution receivership law, as well as statutory priorities for prompt payment to people whose deposits were left uninsured due to RISDIC's failure. To reimburse depositors, DEPCO raised funds through borrowing, asset sales, and other sources.

The State established a special commission to investigate the crisis. The commission found that defendant E & Y, other accountants, former officers and directors of RISDIC, borrowers, the Rhode Island Department of Business Regulation, the General Assembly, and former Governor DiPrete, among others, all contributed to the collapse of RISDIC and the credit unions. Many criminal charges and civil suits have been filed against some of these individuals.

On February 20, 1992, DEPCO filed a complaint against E & Y in Rhode Island Superior Court, charging E & Y with negligence, negligent misrepresentation, and breach of contract ("DEPCO state action"). The DEPCO complaint seeks damages which allegedly resulted from the failure of E & Y to properly audit and report the financial condition of the failed institutions. That action is currently pending.

On July 13, 1993, the Rhode Island General Assembly passed an additional provision to the DEPCO legislation (hereinafter the "DEPCO Act"). The DEPCO Act provides:

> "Notwithstanding any provisions of law to the contrary, a person, corporation, or other entity who has resolved its liability to [DEPCO] ... in a judicially-approved good faith settlement shall not be liable for claims for contribution or equitable indemnity regarding matters addressed in the settlement. Such settlement does not discharge any other joint tortfeasors unless its terms so provide, but it reduces the potential liability of such joint tortfeasors by the amount of the settlement.
>
> The provisions of this section shall apply solely and exclusively to settlement of liabilities to [DEPCO] ... " R.I. GEN.LAW 42–116–40 (1993).

■ This provision was proposed by DEPCO and its representatives, including the defendants. The DEPCO Act's apparent purpose is to encourage settlement of claims brought by DEPCO. To do this, the DEPCO Act prohibits indemnity or contribution suits against joint tortfeasors who settle with DEPCO ("settlors"). Those joint tortfeasors who choose not to settle may subtract the settlement amount from any judgment obtained against them. In other words, a tortfeasor who refuses to settle, but is later found liable at trial, may not bring an action against a settlor for contribution. Rather, that tortfeasor may only deduct the full amount of any settlements from the judgment against it. This is in distinction to Rhode Island's contribution statute, which allows one joint tortfeasor to sue another for their proportionate share of liability, not just the amount of a settlement. R.I. GEN.LAW § 10–6–8.

The Act is similar to CERCLA's contribution provision which is intended to encourage settlement of complex litigation involving numerous defendants. 42 U.S.C. § 9613(f)(2). That provision also gives a final release to settling defendants and offsets the amount of the settlement to non-settling defendants. *See, e.g., United States v. Cannons Eng'g,* 720 F.Supp. 1027, 1050 (D.Mass.1989), *aff'd,* 899 F.2d 79 (1st Cir.1990); *In re Acushnet River,* 712 F.Supp. 1019, 1027 (D.Mass.1989).

Defendants argue that the DEPCO Act provides an incentive to settle. Defendants claim that without this incentive, settlement of liability claims involving directors, officers, accountants, attorneys, appraisers, borrowers, and insurers of over a dozen failed financial institutions will be virtually impossible.

Just two weeks after the General Assembly approved the DEPCO Act, E & Y filed this complaint. E & Y asks this court to declare the DEPCO Act unconstitutional because, E & Y argues, it violates the due process and equal protection clause of the Fourteenth Amendment, and because the law is an unlawful "Bill of Attainder." E & Y alleges that the DEPCO Act, which purposefully deprives E & Y of its rights to contribution, is not rationally related to any legitimate government purpose. E & Y further

alleges that because the contribution provision applies only to defendants in DEPCO suits, the DEPCO Act unlawfully discriminates among different classes of joint-tortfeasors without rational basis. Finally, E & Y alleges that the DEPCO Act is directed at a group of persons consisting solely of E & Y, with the purpose and effect of punishing E & Y for its alleged role in connection with RISDIC.

It has not yet been determined if E & Y has any liability at all in the DEPCO state action. Further, E & Y does not allege that DEPCO has entered into any settlements with any directors, officers or professionals who contributed to the collapse of the RISDIC system. Rather, E & Y fears DEPCO may, in the future, settle with one of E & Y's alleged joint tortfeasors under the new statute and then obtain a judgment against E & Y in the pending action which exceeds the settlement amount. In that situation, E & Y would sue the other joint tortfeasors for contribution. The settlors could then raise the DEPCO Act as a defense.

E & Y seeks declaratory relief because it believes the constitutionality of the DEPCO Act is "uncertain". E & Y claims that this uncertainty has significantly impaired E & Y's ability to value its potential exposure and to proceed appropriately in the pending DEPCO litigation. In addition, E & Y argues that the threat of vastly increased exposure created by the Act is imposing improper and mounting pressure on E & Y to settle the state suit.

## II. *JURISDICTION*

██ Plaintiff brings suit under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; 28 U.S.C. § 1331; 28 U.S.C. § 1343; and 42 U.S.C. § 1983. The Declaratory Judgment Act does not in itself confer subject matter jurisdiction; it provides a remedy for disputes already having federal jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 15–16, 103 S.Ct. 2841, 2849, 77 L.Ed.2d 420 (1983) (citing *Skelly Oil v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). Similarly, 42 U.S.C. § 1983, as a remedial statute, does not confer federal jurisdiction independently. The plaintiff's jurisdictional basis is under 28 U.S.C. § 1331, federal question jurisdiction, which permits federal courts to hear issues "arising under" the United States Constitution, and under 28 U.S.C. § 1343, which confers original jurisdiction upon federal district courts for claims alleging the deprivation of a constitutional right, through state action.

██ In addition to pleading valid jurisdiction, the plaintiff must also allege facts giving rise to a "case or controversy" which is "ripe" for adjudication, before a district court can hear the claim. This is particularly important under these circumstances, where the granting of declaratory relief is discretionary, and, in the First Circuit, should be decided on the side of caution. *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 499 (1st Cir.1992). Defendants allege that E & Y's claim is not ripe, and that the Court should dismiss the complaint for lack of subject matter jurisdiction, under Fed.R.Civ.P. 12(b)(1).

██ In considering a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction a court is not bound by the allegations contained in the complaint. Where a party challenges the actual existence of subject matter jurisdiction the pleadings' allegations are merely evidence on the issue, and the court can look outside the pleadings—to affidavits and depositions, for example—to determine the existence of jurisdiction. Wright & Miller, Federal Practice and Procedure: Civil § 1363. The burden of proof is on the party seeking jurisdiction to present further evidence in support of its position. *McNutt v. General Motors & Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). A jurisdictional challenge based on ripeness of the complaint is considered such a 12(b)(1) motion. *St. Clair v. City of Chico,* 880 F.2d 199, 202 (9th Cir.1989), *cert. den.* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989) ("[T]he issue of ripeness has nothing to do with the merits of claims ..."); *see also Warner Cable Com. v. Borough of Schuylkill Haven,* 784 F.Supp. 203, 205 (E.D.Pa.1992). At this juncture, E & Y has not supplemented its pleadings with affidavits. The court

has examined the memoranda submitted in response to the 12(b)(1) motion.

Defendants argue that the injury alleged by Ernst & Young is contingent upon the occurrence of 4 events: 1) there is a good-faith settlement with at least one joint tortfeasor; 2) E & Y does not settle its suit; 3) At trial, E & Y is found to be a joint tortfeasor, is found liable, and a final judgment is entered against it; 4) the total amount of settlements with all other joint tortfeasors is less than the amount of the final judgment against E & Y. Given that none of these events have occurred, or with any certainty may ever occur, defendants assert that this case is not ripe for adjudication. Naturally, Ernst & Young alleges that its injury is real and established, and not contingent upon any future events. Ernst & Young alleges that the present impact of the statute is to increase the risk and uncertainty of the litigation, as compared to the more general risk of litigation Ernst & Young faced before the statute's enactment, or compared to the risk faced by every other litigant in Rhode Island.

■ The "ripeness" of a claim is subject to a two-part test. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). First the court considers whether the issue is fit for review, whether further development of the facts is necessary for a determination on the merits. *W.R. Grace & Co. v. United States Envtl. Protection Agency*, 959 F.2d 360, 364 (1st Cir.1992). Next, the court considers the issue of "hardship", whether the plaintiff is suffering a direct and immediate harm, necessitating a decision on the merits. It is the latter part of this test which is relevant to E & Y's claim.

■ In the First Circuit, perhaps the most important consideration in determining the ripeness of a claim is the extent to which the claim involves uncertain and contingent events that may not occur as anticipated, or may not occur at all. *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir.1990) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 3532.2); *see also Colonial Courts Apartment Co. v. Paradis*, 780 F.Supp. 88, 91 (D.R.I.1992); *Terra Nova Ins. Co. v. DiStefano*, 663 F.Supp. 809, 810 (D.R.I.1987). In *State of Rhode Island, et al. v. Narrangansett Indian Tribe, et al.*, 19 F.3d 7 (1st Cir.1994), the First Circuit spelled out a method to determine "ripeness." The standards include the question of how conclusive would a decree be, and what hardship results from a failure to grant relief. In this matter, as has been explained, the issue may never arise or if it does arise, it would be under facts and circumstances not now known. The hardship, if any, experienced by E & Y is that of a litigant who claims the law to be invalid. This is indeed a curious form of hardship. Presumably, E & Y has competent counsel to advise it in terms of trial or settlement. This lack of absolute certainty is the stuff in which the professionalism of the lawyer luxuriates. Hardly is this a hardship.

Other circuits have considered issues similar to those at hand. In *St. Clair v. City of Chico*, the Ninth Circuit held that a claim challenging the application of a particular land use regulation was not ripe for review because a final determination had not been reached concerning the appellant's application. 880 F.2d 199, 203 (9th Cir.1989). The court reasoned that an agreement between the County and the City could still be reached which would preclude the injury alleged by the appellant. *Id.* Similarly, in *Metzenbaum v. Federal Energy Regulatory Commission*, the Circuit Court of Appeals for the District of Columbia found a claim unripe where the plaintiff alleged that a statute might hypothetically cause injury. 675 F.2d 1282 (D.C.Cir.1982). In that case, the plaintiff challenged the validity of a law which could have effected the manner in which the Federal Energy Regulatory Commission regulated rates for the sale of natural gas produced in Alaska. The court refused to find the statute unconstitutional where it was not facially invalid, but merely capable of unconstitutional application. *Id.*

In contrast, the district court for the eastern district of Pennsylvania denied a 12(b)(1) motion where the plaintiff did challenge the statute's facial validity. *Warner Cable Com. v. Borough of Schuylkill Haven*, 784 F.Supp. 203, 208 (E.D.Pa.1992). In *Warner Cable*, a cable company had an exclusive contract to

supply cable services to the residents of the defendant-borough. The borough decided to create its own cable system, and passed an ordinance authorizing funding for that purpose. The cable company challenged the validity of that ordinance. The borough challenged the ripeness of the cable company's injury, claiming that the company's own ability to construct a cable system was contingent upon financing, not yet approved. In support of its decision, the court found that the cable company had sufficient funds of its own, and stated that deferring adjudication until the contingent event occurred would not assist in the resolution of the legal issue—whether the borough had the legislative power to finance a cable system. *Id.*

Unlike *Warner Cable,* Ernst & Young has not challenged the facial validity of the DEPCO statute, and in its oral argument actually conceded that the statute was facially valid. Therefore, the reasoning of *Warner Cable Co. v. Borough of Schuylkill Haven, supra,* is inapplicable to these circumstances.

The circumstances of this case appear most similar to that of *Cedars–Sinai Medical Center v. Watkins.* 11 F.3d 1573 (Fed.Cir. 1993). Like the instant action, the plaintiff sought a declaratory judgment concerning the application of a statute, and the defendant filed a 12(b)(1) motion to dismiss on the basis that the court lacked subject matter jurisdiction because the claim was unripe. *Id.* at 1575. In *Cedars–Sinai,* the plaintiff sought to set aside the Board of Patent Appeals and Interferences' ("Board") determination as to the validity of a patent, where an interference was already pending which challenged the Board's decision. Although the plaintiff argued that a "cloud" had been placed over its ability to successfully license its foreign patents, the court did not find possible financial loss to be a sufficient interest to sustain the suit. *Id.* at 1584–85. The appellate court upheld the dismissal of the action, finding that the plaintiff had not suffered any immediate harm—the validity of the patent had not been finally determined. *Id.* at 1585.

In order for E & Y to successfully assert jurisdiction, and seek a judicial determination of the validity of a legislative act, it must show that it has sustained or is immediately in danger of sustaining a direct injury as a result of application of the statute. *Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972) (quoting *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 1, 82 L.Ed. 493 (1937)). As stated previously, E & Y's harm is contingent upon the occurrence of four events. Whether these events will in fact occur is mere speculation at this point. The uncertainties faced by E & Y are no different in quality than those faced by every other litigant. The issue cannot arise until after the pending state case has been decided against E & Y, and providing at least one joint tortfeasor has settled for less than its proportional share of liability. E & Y has not shown that it is experiencing a direct and immediate harm which a decision by this court could avoid, nor that by postponing a decision this court is subjecting E & Y to substantial hardship.

Putting aside for the moment the issue of ripeness, there is a further basis upon which this court should decline to proceed.

### III. *ABSTENTION*

■ Under certain circumstances, federal courts may abstain from rendering a decision affecting state law. In his report and recommendation, the Magistrate Judge considered the "unity of concerns" behind the various abstention doctrines, concluding that those concerns favor abstention in this case. Among these concerns is the interest of federal courts in refraining from interpreting local law prior to its initial application, the need for a concrete case and controversy, and the interest of federalism. These interests are prevalent here, strongly urging this court to abstain.

■ If a pending state action involves an important state interest, and the forum provides the opportunity to litigate related federal constitutional issues, then federal courts should abstain from making decisions affecting the pending action. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Despite its contention to the contrary, E & Y could raise its constitutional concerns in the state action. As noted in the

report of the Magistrate Judge, various methods are available to E & Y. E & Y has the *opportunity* to raise federal constitutional defenses, whether or not it chooses to do so.

Furthermore, as discussed above, E & Y has failed to present a concrete case or controversy. The contribution provision of the DEPCO Act has not yet been interpreted or applied in any state court proceeding. If and when this does occur, the state court could invalidate it on state constitutional grounds, or apply it in a manner which does not raise federal constitutional issues, both precluding the need for federal court intervention.

Finally, interests of federalism favor abstention. The collapse of the RISDIC system had a profound effect on the state of Rhode Island. The General Assembly attempted to address the problem by passing the DEPCO legislation. This court is loathe to consider the federal issues of a singular provision of a comprehensive state act, where that provision has not been interpreted or applied by the state. Mindful that a federal court's primary duty is to adjudicate federal issues, this is a case of the exception, requiring deference at least at the moment to development of the facts in pending state court actions. *Planned Parenthood League of Massachusetts v. Bellotti,* 868 F.2d 459, 464 (1st Cir.1989). Abstention is appropriate.

## IV. *BILL OF ATTAINDER*

■ The United States Constitution forbids the passing of Bills of Attainder. U.S. Const. Art. I, § 10. The Supreme Court has defined a bill of attainder as a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without the protection of a trial. *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977). E & Y alleges that the DEPCO Act is a bill of attainder because, despite its general language, the Act seeks to punish E & Y for its role in connection with the collapse of the RISDIC system, by limiting E & Y's contribution rights.

■. To qualify as a Bill of Attainder, the legislation must "punish" an individual or identifiable group. The Supreme Court has identified three factors relevant to determining whether a statute inflicts punishment: 1) whether the challenged statute falls within the historical meaning of legislative punishment; 2) whether the statute viewed in terms of the type and severity of burdens imposed reasonably can be said to further nonpunitive legislative purposes; and 3) whether the legislative record evinces a congressional intent to punish. *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632 (1984) (citing *Nixon, supra,* 433 U.S. at 475–76, 97 S.Ct. at 2806–07). Taking each element in turn does not, as E & Y argues, result in "condemnation of the Act."

■ First, the Act does not fall within the historical meaning of legislative punishment. Contrary to E & Y's contention, increased risk in litigation does not equate to a loss of property. On the other hand, a denial of access to the courts, or prohibiting a party from bringing an action, has been defined as punishment by bills of attainder. *See, e.g., Pierce v. Carskadon,* 83 U.S. (16 Wall) 234, 238–39, 21 L.Ed. 276 (1872); *Cummings v. Missouri,* 71 U.S. (4 Wall) 277, 320–21, 18 L.Ed. 356 (1866). This Act, however, does not prevent E & Y's access to the courts, or its right to contribution, it merely limits the amount of the settling tortfeasors' contribution. It is possible, that it will eventuate that E & Y is entitled to a greater amount of relief under the new statute than it would be otherwise. It may end up paying nothing, or less than its fair share.

The second element considers whether, viewing the Act reasonably and in light of the type and severity of the burdens imposed, the Act furthers a nonpunitive purpose. According to the defendants, the Act is designed to promote settlements, decrease the amount and cost of litigation relating to the RISDIC collapse, thus saving the taxpayers' money. The burden on E & Y is choosing whether to settle the case, or continue its defense, with the potential of increased exposure if DEPCO enters into settlement agree-

ments with other joint tortfeasors. The burden faced by E & Y is no different from of all other defendants in DEPCO suits. A reasonable mind could conclude that the legislation has a non-punitive purpose.

Finally, the court must consider the argument that the Rhode Island General Assembly intended to punish E & Y. The Rhode Island General Assembly has no formal record of legislative history accompanying this or any other act it has ever passed. Although there was information suggesting that E & Y was indeed a target of the legislation, this could only be so if E & Y put itself in a position to be a target. Liability for negligence can hardly be an unexpected result from freely contracted responsibility. In the absence of such a public record, there is no proof to support E & Y's claim that passage of the Act was motivated solely to punish E & Y.

E & Y has not met its burden of proof. The Act is not an unconstitutional bill of attainder.

■ Although E & Y seeks discovery to prove the legislature's nefarious purposes, there is really nothing to discover on this issue. Legislative history may not be created ex post facto. *See Rhode Island Federaration of Teachers v. Norberg*, 630 F.2d 855, 863 (1st Cir.1980); *Marrapese v. State of Rhode Island*, 500 F.Supp. 1207, 1217 (D.R.I. 1980).

## V. *CONCLUSION*

■ Having reached the conclusion that the issues are not ripe for review, the question is whether to dismiss or to stay the action. As discussed above, Article III, section 2 of the United States Constitution limits federal jurisdiction to actual cases and controversies. U.S. CONST., ART. III, § 2. The requirement of a concrete legal controversy must be met regardless of the type of relief sought, including declaratory relief. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *See also Blue Cross of Rhode Island v. Cannon*, 589 F.Supp. 1483, 1489 (1984). Ripeness is not merely a procedural question; it determines jurisdiction. If a

claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990), *cert. den.* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *Blue Cross, supra*, at 1490 (subject matter jurisdiction does not attach to speculative claims). The alleged injury claimed by Ernst and Young is far too remote and contingent on too many uncertain events to warrant adjudication at this time.

Aside from the issue of ripeness, abstention is appropriate under these circumstances. The validity of the DEPCO Act has not yet been determined by the Rhode Island judiciary. There is a state action pending which could resolve these issues in a manner which does not raise federal constitutional issues. The First Circuit has approved dismissal of actions under the various abstention doctrines. *See, e.g., Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529 (1st Cir.1991); *Gonzalez v. Media Elements, Inc.*, 946 F.2d 157 (1st Cir.1991); *see also Bettencourt v. Bd. of Registration in Medicine*, 904 F.2d 772, 781 (1st Cir.1990). The facts of this case coupled with the on-going state suit provide a strong basis on which to abstain.

Accordingly, the motion to dismiss under Fed.R.Civ.P. 12(b)(1) is granted.

The action is dismissed without prejudice.